IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SPENCER GARDNER,<br><br>Plaintiff,<br><br>vs.<br><br>MISSOULA COUNTY, JOHN/JANE DOES 1-13, MEDICAL CONTRACTOR d/b/a/ WELLPATH, MICHAEL HASH, COMMANDER ZIEGLER, COMMANDER KOWALSKI, TERA TACKET, KELLY ANN KLAUBER, BRIANNA CHRISTINE FREDRICK,<br><br>Defendants. | CV 23-146-M-DWM<br><br><br>ORDER |

Pending before the Court is Wellpath Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 33.) Wellpath is a private company contracted to provide medical services at the Missoula County Detention Facility ("MCDF"). Wellpath employees Kelly Ann Klauber and Brianna Christine Fredrick are also named as defendants. The County Defendants were previously dismissed from this matter. *See*, (Doc. 63.)

1

Prior to briefing on the Wellpath Defendants' motion to dismiss being completed, this matter was stayed as a result of bankruptcy proceedings involving Wellpath in the United States Bankruptcy Court of the Southern District of Texas. (Doc. 40.) The stay was lifted as to the Wellpath Defendants on August 13, 2025, and the parties were directed to complete briefing on the motion to dismiss. (Doc. 63.) Briefing now complete, this matter is ripe for adjudication.

I. **County Defendants/Unconstitutional Policy**

The background relative to the dismissal of the County Defendants' from this matter is pertinent to some of the claims remaining against the Wellpath Defendants and will be briefly summarized.

Gardner was incarcerated at Missoula County Detention Facility ("MCDF") for two separate periods, the first being from August 18, 2022, until his release in January of 2023. In October of 2023, Gardner was transferred back to MCDF, following extradition from the Spokane County Jail in Washington. On November 3, 2023, Gardner was sentenced in Missoula County District Court, at which point he became a convicted prisoner under the custody of the Montana Department of Corrections. On February 20, 2024, Gardner was transferred to the Montana State Prison ("MSP"). *See*, (Doc. 18 at 6.) Gardner alleged that he was denied dental care, specifically a root canal, during both custodial stays and that MCDF had an "extraction only" policy that was facially unconstitutional.

2

County Defendants first argued a refusal to perform root canals and instead provide extractions does not violate the Eighth Amendment. This Court then took judicial notice of MCDF's dental policy. It was ultimately determined that it was not, in fact, an "extraction only" policy and Gardner's assertion that such a policy existed was inaccurate. (Doc. 63 at 10-12.)

Gardner's dental care and requests for treatment during both of his periods of incarceration were reviewed in detail and it was determined that even under the more lenient Fourteenth Amendment standards applicable to pretrial detainees, there was no denial or unreasonable delay in treatment. (*Id.* at 12-16.)

For purposes of the instant motion, to the extent that Gardner suggests Wellpath was somehow involved in developing and/or tacitly adopting an unconstitutional dental policy, the claim fails in light of the fact that the purported "extraction only" policy does not exist.

## II.    Wellpath/Bankruptcy Proceedings

As to the Wellpath Defendants, Gardner alleged that they intentionally failed to provide him with sufficient medical treatment while he was incarcerated at MCDF, which put him at a substantial risk of serious harm. *See*, (Doc. 18 at 8-11; 14-17.) Wellpath Defendants filed their initial motion to dismiss and brief in support on October 14, 2024. (Docs. 33 & 34.)

Wellpath Defendants then filed a Suggestion of Bankruptcy advising the

3

Court that on November 11, 2024, Wellpath LLC, had filed a Voluntary Petition for Non-Individuals Filing Bankruptcy for Relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (Houston Division)(the "Bankruptcy Court"). *See*, (Doc. 37.) On November 20, 2024, the Court entered an order staying the matter as to all parties. (Doc. 40.)

In response to Gardner's initial motion to lift the stay, Wellpath Defendants informed the Court that the automatic stay previously in place as a result of the bankruptcy proceedings had expired as to all parties. The stay applicable to Wellpath entities expired on May 9, 2025, and the stay applicable to non-debtor defendants expired on May 7, 2025. (Doc. 50 at 2.) Wellpath's counsel further advised that the Bankruptcy Court entered an order confirming Wellpath's First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. And Certain of Its Debtor Affiliates ("the Plan"). (*Id.*) The Plan's effective date was May 9, 2025. Counsel stated they were awaiting further guidance from bankruptcy counsel regarding handling of the claims against Debtor entities under the Plan and would provide additional information as it came available. (*Id.*)

On May 29, 2025, an Order was entered leaving the stay in place as to the Wellpath Defendants but directing them to provide updates regarding the status of the continued bankruptcy proceedings. (Doc. 52.) On June 27, 2025, Wellpath

4

filed a Notice of Discharge and Injunction. (Doc. 55.) Attached to the Notice were a copy of the 5/1/25 Confirmation Order and the 6/4/25 Stay Order entered by the Bankruptcy Court. (Docs. 55-1 & 55-2.) Wellpath advised that pursuant to Article IX.A of the Plan and Paragraph 3 of the Stay order, all claims and causes of action against debtors were discharged as a result of the plan becoming effective. (Doc. 55 at 3.) Thus, the Bankruptcy Court has unequivocally enjoined any holders of pre-petition claims against any Debtor entities from proceeding with claims or causes of actions against Debtor entities. (Doc. 59 at 3); *see also*, (Doc. 59-1)(Confirmation Order).

 While Gardner may have filed a timely opt-out of the third-party releases that preserved his ability to pursue claims against non-debtors, potentially including Klauber and Frederick, this opt out does not affect Wellpath's discharge or the injunction enjoining litigation against Wellpath following its restructuring. Accordingly, Wellpath is dismissed as a Defendant in this action. Any claims against Wellpath, including those alleging *Monell*[1] type violation for Wellpath's purported policy implementation or claims that Wellpath negligently supervised its employees, such claims must be pursued, if at all, in the bankruptcy action.

//

---

[1] *See, Monell v. Department of Social Services*, 436 U.S. 658 (1978), in which the Supreme Court held, in part, that §1983 claims against municipal entities must be based on implementation of a policy or custom.

5

### III. Doe Defendants

Wellpath Defendants argue that the Doe claims and unnamed defendants should be dismissed. Gardner contends that through discovery, he will be able to identify the Doe parties. (Doc. 29 at 2.) The use of Doe defendants in federal courts is "generally disfavored." *Gillespie v. Civiletti*, 629 F. 2d 637, 642 (9th Cir. 1980). In *Gillespie* it was noted that situations arise where it is appropriate to allow Doe defendants to be named, "where the identity of the alleged defendants will not be known prior to the filing of a complaint." *Id.* Courts generally apply this exception only where the plaintiff has alleged some specific facts about the Doe defendant showing that the plaintiff should be permitted to conduct discovery to learn the identity of the individual. In the instant matter, Gardner has failed to allege sufficient facts supporting claims against any named defendants or potential unnamed Defendants. Accordingly, the *Gillespie* exception does not apply; the Doe defendants are dismissed.

Thus, the only remaining claims are those against Klauber and Frederick individually.

### IV. Klauber and Frederick

As explained below, Defendant Klauber and Defendant Frederick's motion to dismiss all claims against them based upon Fed. R. Civ. P. 12(b)(6) will be granted.

### i. Standards Governing Motion to Dismiss

While Gardner suggests that this Court's review of his amended complaint, pursuant to 28 U.S.C. §1915A is sufficient to defeat Defendants' motion to dismiss, *see e.g.*, (Doc. 29 at 1), he is mistaken. Because Gardner is a prisoner proceeding in forma pauperis, his Complaint required a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). This *sua sponte* screening procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that a defendant may later bring. *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see also Lucas v. Jovanovich,* 2016 WL 3267332, at *3 (D. Mont. June 10, 2016).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court ordinarily must construe a *pro se* litigant's pleading liberally and hold a *pro se* plaintiff "to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(citation omitted).

The Court must accept as true all non-conclusory factual allegations

contained in the complaint and must construe the complaint in the light most favorable to the plaintiff. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 989 (9th Cir. 2009). "Generally, a court may not consider material beyond the complaint in ruling on a Fed. F. Civ. P. 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F. 3d 1048, 1052 (9th Cir. 2007)(citation omitted). The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F. 3d 1202, 1212 (9th Cir. 2012)(citation omitted); *Schneider v. Cal. Dep't of Corr.*, 151 F. 3d 1194, 1197 n.1 (9th Cir. 1988)("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")(citations omitted; emphasis in the original). The court may also consider documents referenced in the complaint under the incorporation by reference doctrine when the authenticity of the subject document is uncontested, and the complaint extensively relies upon the subject document. *See, Knievel v. ESPN*, 393 F. 3d 1068, 1076 (9th Cir. 2005).

    ii.    **Factual Background**

The following facts are taken from Gardner's Amended Complaint, (*see* Doc. 18), and, at this stage of the proceeding, are assumed to be true and construed in the light most favorable to him, *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107,

1114 (9th Cir. 2021).

Gardner's medical care claims stem from his second period of incarceration, beginning in October of 2023, and ending with his transfer to Montana State Prison on February 20, 2024. Gardner was sentenced on his state criminal case November 3, 2023. Thus, for the period of time corresponding to the claims alleged against Klauber and Frederick, Gardner was a convicted and sentenced state prisoner.

Upon his arrival at MCDF on October 11, 2023, Gardner informed staff that he had been having issues with his hernia mesh. (Doc. 18 at 8-9.) Over the following weeks, Gardner experienced increased discomfort and pain. On October 29, 2023, Gardner filed a medical request advising staff of his pain and continued issues. The following day, an outside appointment was scheduled for him. (*Id.*)

On November 3, 2023, Gardner was seen by Nurse Orr for groin pain. The following day, he advised MCDF medical staff he was experiencing severe groin pain and could not urinate. Medical staff used a catheter to drain Gardner's bladder. The pain and discomfort persisted. Staff informed Gardner he would be seen after the shift change at 6:45 p.m.. Following the shift change, Defendant Frederick performed the facility's pill pass prior to seeing Gardner. At approximately 8:10 Gardner was seen by staff and attempts to drain Gardner's bladder with a catheter were unsuccessful. Gardner was subsequently taken to Providence Medical Center Emergency Room for treatment that evening. (*Id.* at 9-

10.) At Providence, a bladder scan was performed, and an indwelling catheter was inserted to drain the excess fluid from his bladder. A referral to a urologist was made and Gardner returned to MCDF. (*Id.* at 10.) Gardner states his issues continued.

On November 13, 2023, Gardner was seen by the urologist. He was prescribed medication, and a surgical consult was recommended. (*Id.*) Notably, no recommendation for immediate surgical intervention was made. On December 1, 2023, Gardner filed a grievance alleging Klauber had denied him adequate medical care; the grievance was denied. (*Id.*) Gardner filed an appeal, which was denied by an unidentified individual. (*Id.* at 10-11.) Gardner the filed a second-level appeal.

On December 15, 2023, Gardner was seen by Klauber, and his urinary issues were discussed. Three days later, Klauber met with Dr. Medrano to review Gardner's medical situation. Dr. Medrano recommended that a CT scan be performed; Gardner states this was so that any surgeon subsequently consulted would have additional information. (*Id.* at 11.)

On December 29, 2023, Captain Hash granted Gardner's second-level grievance appeal.

On January 11, 2024, a CT scan was performed. Again, there is no indication that immediate surgery was prescribed or warranted following the scan.

(*Id.*)  On January 24, 2024, Gardner was again seen by Klauber who apparently informed him that a surgical consult would not be scheduled as the procedure was considered to be elective in nature.  On February 2, 2024, Gardner was seen again by Klauber, who reaffirmed the view that a surgical consult was elective.  Gardner was transferred to MSP on February 20, 2024.  (*Id.*)

### iii.   Gardner's Claims

Based upon this background, Gardner alleges Klauber and Frederick acted with deliberate indifference to his medical needs.  He specifically asserts that Frederick unnecessarily delayed his medical treatment on November 4, 2023, prior to his transport to the Providence Emergency Room.  (Doc. 18 at 20.)  Gardner alleges Klauber ignored his medical needs and withheld medical care.  Specifically, Gardner claims Klauber, knowing that Captain Hash had granted his grievance, denied him a surgical consult.  Gardner also asserts Klauber acted outside of her scope of practice and area of expertise by diagnosing and effectuating a change in his treatment plan in violation of his constitutional rights.  (*Id.* at 19.)

### iv.   Denial of Medical Care

To state a §1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97,

11

106 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

In the Ninth Circuit, the test for deliberate indifference to medical needs is two-pronged: (1) "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The second prong requires a showing of: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 quoting *Jett*, 439 F.3d at 1096. "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05).

**Serious Medical Need**

Based upon Gardner's filings, it is not clear that a failure to treat his hernia/bladder issue would have resulted in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. In construing the facts in a light most favorable to Gardner, however, the Court will presume that

his medical need was serious. *Ariix, LLC.*, 985 F.3d at 1114.

### Deliberate Indifference

Relative to Frederick, Defendants argue that Gardner has not alleged facts showing that on November 4, 2023, Frederick actually knew Gardner's condition was life-threatening at the time she prioritized pill pass to the MCDF inmates before seeing Gardner. (Doc. 71 at 5.) Defendants point out that medical professionals are regularly required to make triage decisions and that pill distribution to multiple inmates was a task that could not arbitrarily be delayed. (*Id.*) The Court agrees. There is no allegation that Frederick recognized the urgent nature of Gardner's condition on the day in question and then chose to ignore it. Thus, there is no indication that Frederick purposefully failed to respond to Gardner's need. *Wilhelm*, 680 F.3d at 1122. There was a short delay, but that delay appears to be limited in time and solely in response to other medical needs that needed to be attended to within MCDF.

The remainder of Gardner's allegations are aimed at Klauber. To the extent that Gardner's argument centers upon the delay in receiving surgery to address his hernia mesh/bladder issues, the claims as pled are insufficient to make a showing of deliberate medical indifference. *Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F. 2d 404, 407 (9th Cir. 1985). As pointed out by Defendants, there is no allegation that immediate surgical intervention was recommended or warranted.

Thus, there was not only no indifference, but Gardner has also not established that harm resulted from the purported delay. *Id.*; *see also, Jett*, 439 F. 3d at 1096.

While Gardner's amended complaint establishes that he complained of issues related to his bladder from November 3, 2023, until his transfer to MSP in February of 2024, there is no indication that a surgery was ever found to be medically necessary. Instead, Gardner was referred for further consultation with a surgeon.

Even when viewing the allegations in a light most favorable to Gardner, at most he has alleged a difference of opinion about the best way to treat his medical conditions. Gardner believes Klauber should have followed a different course of action, this belief, however, is insufficient to support a claim. An inmate's difference of opinion with a medical provider's methodology or course of treatment does not amount to deliberate indifference. *See e.g., Toguchi v. Chung*, 391 F. 3d 1051, 1058 (9th Cir. 2004); *see also, Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a Section 1983 claim."). Further, Gardner's suggestion that he was being denied surgical intervention is also insufficient to state a claim. As the United States Supreme Court stated, "the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a

14

matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). But Gardner cannot support a claimed constitutional violation by showing medical malpractice or negligence. *Id.* at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner).

The record reveals that during the relevant time period Gardner: met repeatedly with MCDF medical staff, consulted with a urologist, had his case reviewed by Dr. Medrano, and underwent a CT scan. There is nothing before this Court to suggest that Gardner's medical issues constituted an emergent or urgent medical condition requiring surgical intervention. His allegation that Defendants were deliberately indifferent to a serious medical need stops short of the line between probability and the possibility of relief because the alleged facts are at most merely consistent with a defendant's liability. *Iqbal*, 556 U.S. at 678.

Gardner's allegations are insufficient to state a denial of medical care claim and will be dismissed. Further, because Gardner has not stated a claim for federal relief, this Court declines to exercise supplemental jurisdiction over his state law claims for medical negligence/malpractice and professional negligence. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Based on the foregoing, IT IS ORDERED:

1. Wellpath Defendants' motion to dismiss (Doc. 33) is GRANTED in full. Wellpath Defendants are DISMISSED from this action.

2. The Clerk of Court is directed to enter judgment pursuant to F. R. Civ. P. 58.

3. All other pending motions (Docs. 65, 69, and 72) are DENIED as moot.

4. The Clerk of Court is directed to close this matter.

DATED this 15 day of December, 2025.

_____
Donald W. Molloy, District Judge
United States District Court